UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80525-CIV-MARRA/MATTHEWMAN

JENNIFER FORD HERNANDEZ,

      Plaintiff,

vs.

OCWEN LOAN SERVICING, LLC and
U.S. BANK NATIONAL ASSOCIATION,
as trustee for GSMPS 2005-RP3,

      Defendant.

_____/

**DEFENDANTS'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank National Association, as Trustee, successor-in-interest to Wachovia Bank National Association, as Trustee for GSMPS Mortgage Loan Trust 2005-RP3, Mortgage Pass-through Certificates, Series 2005-RP3 (the "Trustee") (collectively, "Defendants"), through undersigned counsel, set forth the following statement of undisputed material facts pursuant to S.D. Fla. L.R. 56.1.

**Freddie Ford and Annette Erckman Are Given a Loan to Purchase the Property**

1. On or about April 29, 1994, Freddie Allen Ford ("Ford") and Annette Margaret Erckman ("Erckman") (collectively the "Borrowers") executed and delivered a Note secured by a Mortgage in favor of First State Bank, which secured the Note as a lien on the property located at 174 Nelson Dr., Brighton, Tennessee 38011 ("Property").  (Freddie Ford Deposition dated April 26, 2018 ("Ford Dep.") at 53:15-57:9, a true and accurate copy of the Ford Dep.is attached hereto as **Exhibit 1**; s*ee also* Kevin Flannigan's Affidavit in Support of Defendants' Motion for Summary Judgment ("Flannigan Aff.") at ¶¶ 6-8, a true and accurate copy of the Flannigan Aff. is attached hereto as **Exhibit 2**).

2. True and accurate copies of The Note and Deed of Trust (collectively, the "Loan"), are attached hereto as **Exhibits 3 and 4**.

3. At some later date, the same Property became known at 165 Nelson Dr., Brighton, Tennessee 38011.  (Ford Dep. at 56:7-9).

4. Erckman passed away on September 5, 2009.  (Ford Dep., Ex. 12).

5. The Borrowers were habitually delinquent in their Loan payment obligations, and eventually, as a result of one of the delinquencies, the Borrowers were offered a Non-HAMP Loan Modification, dated as of March 2013. (*See* Kyle Lucas Deposition dated January 10, 2018 ("Lucas Dep.") at 93:8-17, a true and accurate copy of same is attached hereto as **Exhibit 5**; Jennifer Ford Hernandez Deposition dated February 13, 2018 ("J. Hernandez Dep.") at 92:1-93:5, a true and accurate copy of same is attached hereto as **Exhibit 6**; Compl., Ex. 4; Flannigan Aff., ¶10, 13).

6. Plaintiff contends that her father Ford executed this loan modification while in prison in Shelby County,. Tennessee; however, contrary to this testimony, Ford testified that he was imprisoned in Oakdale, Louisiana in March 2013.  (J. Hernandez Dep. at 93:22-95:4; Ford Dep. at 28:3-24).

7. The loan modification was ultimately recorded in the public records of Tipton County, Tennessee at Book 1617, Pages 751-757.  (Compl., Ex. 4; Flannigan Aff., ¶6 and Ex. A).

8. Plaintiff is not a borrower nor party to any of the loan documents.  (J. Hernandez Dep. at 87:15-23; Lucas Dep. at 129:6-21).

9. Plaintiff is merely an authorized third party on her father Ford's loan account. (Flannigan Aff. at ¶9; Lucas Dep., 8:5-6, 15:12-22; J. Hernandez Dep., 25-26).

<b>The Borrowers Allegedly Transferred the Property to Plaintiff<br>
And Ford Is Sent To Prison In July 2008</b>

10. On August 26, 2009, Ford executed a General Durable Power of Attorney in favor of Plaintiff.  (Compl., ¶13, Ex. 2).

11. On or about August 26, 2009, Plaintiff contends that she was added as an authorized third party on the loan account. (*Id.* at ¶14; J. Hernandez Dep., 87:15-23; Lucas Dep., 129:6-21; Flannigan Aff., ¶¶ 9, 14).

12. Plaintiff alleges that in November 2008, Ford and Erckman entered into separate sales contract agreements to transfer their interests in the Property to her.  (J. Hernandez Dep. at 34:9-35:11; Flannigan Aff., ¶11).

13. Plaintiff is unaware where the copy of the Sales Contract between herself and her father came from (*see* Complaint, Ex. 1), and further contends that she does not have the sales contract between herself and Erckman because it burned in her house. (*Id.*; *see also* 35:12-36:7).

14. Further, there is no evidence that any contract for the sale and purchase of the Property exists as between Ms. Erckman—deceased since September 2009—and Plaintiff. (Ford Dep. at 13:12-21; J. Hernandez Dep. at 35:6-11).

15. The transfer of the Property was allegedly memorialized by a quitclaim deed ("QCD"), which also allegedly burned in the May 2015 fire. (J. Hernandez Dep. at 27:11-29:5; 42:14-19; Flannigan Aff., ¶11).

16. The QCD was never recorded in the public records. (J. Hernandez Dep. at 28:7-21).

17. Moreover, there are call recordings from June 2015 in which Plaintiff considered her father the owner of the Property. (Flannigan Aff., Composite Ex. D, ANWARSUM 6.24.2015 Tr. at 7:11-16, 9:19-10:1).

18. Neither Ocwen, nor its predecessor, General Motors Acceptance Corporation Mortgage ("GMAC"), was ever provided any QCD, or a copy thereof, recorded or unrecorded, by Ford, Erckman, Hernandez, or anyone purporting to act on their behalf. (K. Flannigan Aff. at ¶ 11).

19. Neither Ocwen nor US Bank ever had possession of any QCD purporting to convey a legal interest in the Property from Ford and Erckman to Plaintiff Hernandez. (*See id.*).

20. Moreover, Plaintiff, in a recorded phone call with Ocwen, admitted that the deed was never redone. (J. Hernandez Dep. 178:3-25; Flannigan Aff., ¶ 14, Composite Ex. D).

21. Her stated purpose for the call was to have Erckman removed from the deed so that any checks issued by the insurance company would not also be issued in the name of Erckman's estate. On those June 24, 2015 telephone calls, Plaintiff admitted that there was no QCD executed by Erckman, to Plaintiff or anyone else, prior to that telephone call. On that same day, Plaintiff further agreed that she is not a borrower or co-borrower on the account, merely an authorized third party. (K. Flannigan Aff. at ¶ 13, 14; Lucas Dep., 8:5-6, 15:12-22; J. Hernandez Dep. at p. 25-26).

22. To further support these fraudulent claims, Plaintiff had Ford execute an affidavit, and other documents—all prepared by Plaintiffs' lawyer, in March 2018 stating that he executed

3

a QCD transferring his interest in the Property to Plaintiff in November 2008 and saw Erckman execute a quitclaim deed transferring her interest in the Property for $1, yet, Mr. Ford himself refuted these statements at his deposition. (Ford Dep., 13:12-21, 91:5-92:10, Ex. 1).

23. However, Plaintiff testified that Erckman executed a sales contract by and between Ford, Erckman, and Plaintiff, whereby Plaintiff was to pay Erckman $10,000.00 in consideration for her conveyance of Erckman's interest in the Property. (J. Hernandez Dep. at 34:20-22).

24. In January 2009, Ford was sentenced to one hundred and thirty months (130) months of imprisonment for having been convicted of various crimes, including fraud, mail fraud, and money laundering. (Ford Dep. at 8:4-24, Ex. 7).

25. Plaintiff asserts that once Ford went to prison, she took responsibility for the home, including making payments under the Loan. (J. Hernandez Dep. at 29:9-30:1).

26. Neither Ocwen nor US Bank ever considered Plaintiff to be the owner of the Property. (Flannigan Aff. at ¶ 9).

27. Ford testified that, while already in prison, he wanted to put metal roofing on the Property and that he would give Plaintiff the Property with a metal roof, and, in connection with the 2013 loan modification that she should just keep the Property and he would not say anything.. (Ford Dep. 68:21-69:1, 69:9-23).

28. Further, Plaintiff and Ford testified that the deed was never redone and that Erckman would have given the house to Plaintiff as well. (J. Hernandez Dep. 178:3-25; Ford Dep., 62:23-63:20).

29. Ford further testified that he did not even know whether Erckman was in Tennessee during the time of the alleged transfer in November 2008. (Ford Dep. at 64:20-25).

**A Fire Occurs At The Property In May 2015.**

30. As stated above, Ford and Erckman, the Borrowers, were regularly in default of their payment obligations under the Loan, and their last delinquency was in March 2015. (Lucas Dep. at 127:8-12).

31. After the March 2015 default, a fire occurred at the Property on May 23, 2015. (J. Hernandez Dep. at 51:2-5).

32. This fire was allegedly the result of Plaintiff lighting candles and failing to put them out prior to leaving the home. (*Id.* at 105:25-107:1).

33.     As a result, Plaintiff retained various vendors to perform work on the Property, including ServiceMaster and First Team, who to this day, still hold personal property from the Property in storage for Plaintiff, her husband, and Ford. (*Id.* at 127:7-24, 252:20-256:18).

34.     Plaintiff acknowledges that she has only visited the storage facility two-three times. (*Id.* at 254:15-22).

35.     Plaintiff made an insurance claim on the Property with her insurance carrier, Farmers Insurance, as a result of the fire. (J. Hernandez Dep. 116:5-11).

36.     Part of the insurance claim resulted in the issuance of a multi-party check by Farmers Insurance on July 15, 2015, in the amount of $13,246.99. (*Id.* at 122:8-16; Compl., Ex. 7).

37.     The parties listed on the check are Ocwen Loan Servicing, LLC, Jennifer Hernandez, David Hernandez, and Freddie Ford. (*Id.*).

**Plaintiff Attempts To Payoff The Loan With Insurance Proceeds**

38.     After the fire in May 2015, Plaintiff requested a Payoff Quote from Ocwen in order to payoff the Loan. (J. Hernandez Dep. at 140:15-141:5; Compl., Ex. 6).

39.     Plaintiff alleges that she contacted Ocwen in order to receive a payoff quote. (*See id.*).

40.     On July 14, 2015, Ocwen issued a Payoff Quote good through July 17, 2015, wherein the quote provides that the total amount due is $13,246.99. (*See id.*; Lucas Dep., 9:21-10:9 and Ex. 2)

41.     The Payoff Quote also provides that "[i]ssuance of this statement does not suspend the contractual requirement to make loan payments when due.  If payoff funds are received after the expiration of the grace period, if such a period is applicable to the loan, a late charge will be due.  Payment of all late charges will be required to be paid prior to the application of any payoff funds and satisfaction of the Mortgage/Deed of Trust." And, "[i]f the account is past due, collection expenses and legal fees may be accruing.  If this is an adjustable rate Note, the per diem may change prior to payoff." (Compl., Ex. 6 at 3; Lucas Dep. at 126:4-128:1).

42.     The Payoff Quote further states" "[a]ll payoff funds must be sent via certified funds such as: Wire Transfer, Cashier's Check, Certified Bank Check, Title Company Check or Attorney's Escrow Check." (*Id.*).

5

43. Plaintiff alleges she ultimately transmitted to Ocwen a multi-party check issued by Farmers Insurance on July 16, 2015.  (J. Hernandez Dep. at 141:22-143:21; Compl., ¶24 and Ex. 7).

44. Plaintiff further contends that Ocwen received the insurance funds on July 17, 2015.  (*Id.* at 141:22-143:21; Compl., ¶69).

45. However, and as Plaintiff admitted, there was an error in the FedEx package she sent, and those funds were not received by Ocwen until July 24, 2015, which was 7 days after the good through date on the Payoff Quote.  (*Id.* at 142:20-24; FedEx Shipping Information Report, a true and accurate copy of same is attached hereto as **Exhibit 7)**.

46. The loan was delinquent at the time of the attempted payoff, in foreclosure as of July 7, 2015, and the additional fees accrued and owing were related to charges as a result of the delinquency and foreclosure.  (Lucas Dep. at 11:15-12:10; 127:18-21).

47. Even after these late funds were received, Ocwen advised Plaintiff that pursuant to its policies and procedures, she was required to send in a letter of request to have these funds applied to payoff of the loan, and on August 4, 2015, Plaintiff advised Ocwen's representative that she was not ready to send in the letter of request.  (Lucas Dep. at 91:3-92:11).

48. Once Ocwen received the letter of request in October 2015, it followed its policies and procedures of generating a payoff quote, and providing that quote to an affidavit specialist in the Hazard Claims department.  (*Id.* at 55:11-25; 89:5-90:14; 140:1-141:5).

49. A payoff affidavit was then generated by the affidavit specialist, and the payoff quote and affidavit were then provided to Plaintiff on October 19, 2015—as authorized third-party for borrower Ford, for execution by Ford.  (*Id.* at 89:5-13; Compl, Ex. 11; Flannigan Aff., ¶ 9).

50. The October 2015 payoff affidavit requested additional funds in the amount of $1,538.49, and as a result, Plaintiff refused to execute the payoff affidavit.  (J. Hernandez Dep. at 188:5-10, 190:2-16; Compl., Ex. 11).

51. In November 2015, Plaintiff, unbeknownst to her father Ford, filed bankruptcy on his behalf, and listed in the bankruptcy petition Ford's street address as the Property.  (*See id.* at 205:23-206:18; Ford Dep. at 27:12-20).

52. Plaintiff candidly admits that she filed the bankruptcy in an effort to thwart the scheduled foreclosure sale from occurring, and testified that she listed her father as an owner of the Property. (J. Hernandez Dep. at 205:19-25).

53. Thereafter, in June 2016, Ocwen provided Plaintiff with a revised Payoff Affidavit, which stated that the amounts held in the Hazard Suspense Account, $13,246.99, would be applied to payoff of the loan; no additional funds were required to payoff the loan. (*Id.* at 194:10-195:6; 204:10-205:22; Compl., Ex. 13; Lucas Dep., 31:24-32:3, 47:24-48:4).

54. And again, Plaintiff refused to execute the Affidavit even though it would have provided for the relief she is claiming to have requested. (J. Hernandez Dep. at 194:10-195:6; 204:10-205:22; Lucas Dep. at 110:9-111:9).

55. Moreover, Plaintiff acknowledged that Ocwen pushed her to sign the June 2016 payoff affidavit as it was in her best interest. (*Id.* at 202:24-203:20).

### The Property Is Sold To A Third Party In January 2017

56. Due to Plaintiff's failure to remit the additional amounts owed or execute the June 2016 Payoff Affidavit within the deadline provided, the Property went up for foreclosure sale. (Flannigan Aff., ¶ 15).

57. Prior to the foreclosure sale, Plaintiff claims that personal property of hers was removed from the Property. (Compl., ¶ 38; Hernandez Dep. at 245:1-246:5).

58. However, both Plaintiff and her husband, David Hernandez, testified that it was in fact Mr. Hernandez who compiled this list, and Mr. Hernandez is unsure what items are in storage with ServiceMaster and which items are Ford's. (J. Hernandez Dep., 246:18-25; David Hernandez Deposition dated February 13, 2018 ("D. Hernandez Dep.") at 22:14-21, 24:16-19, a true and accurate copy of same is attached hereto as **Exhibit 8**).

59. US Bank properly noticed the sale in accordance with the terms of the Loan and the relevant Tennessee statutes. (*See* Ex. 2; a true and accurate copy of the Substitute Trustee's Deed is attached hereto as **Exhibit 9;** Flannigan Aff., ¶¶ 15-16).

60. The Property was ultimately sold at foreclosure auction on January 19, 2017 to a third party purchaser. (Lucas Dep. at 113:20-114:9; Flannigan Aff., ¶15).

61. As a result of the sale, Plaintiff instituted the above-referenced action on April 25, 2017. (*See generally* Complaint [D.E. 1]).

**GREENBERG TRAURIG, P.A.**

/s/ *Jason H. Okleshen*
Jason H. Okleshen, Esq.
Fla. Bar No. 496170
okleshenj@gtlaw.com
Brandon S. Leon, Esq.
Fla. Bar No. 091525
leonb@gtlaw.com
777 S. Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
Telephone:  561-650-7900
Facsimile:   561-655-6222

Dated: June 1, 2018

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 1, 2018 I electronically filed Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record on the attached service list:

| | |
|---|---|
| Charles A. Gower, Esq. | Robert Andrew Bernstein, Esq. |
| Shaun P. O'Hara, Esq. | Brian W. Chaiken, Esq. |
| Charles A. Gower, P.C. | Annesser & Chaiken, PLLC |
| P.O. Box 5509 | 2525 Ponce De Leon Blvd., Suite 625 |
| 1425 Wynnton Road | Coral Gables, Florida 33134 |
| Columbus, GA 31906 | rberstein@aclaw-firm.com |
| *Charles@cagower.com* | *bchaiken@aclaw-firm.com* |
| *shaun@cagower.com* | |

By:  */s/ Jason H. Okleshen*
     Jason H. Okleshen, Esq.