UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-80525-CIV-MARRA/MATTHEWMAN

JENNIFER FORD HERNANDEZ

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC and
U.S. BANK NATIONAL ASSOCIATION,
as trustee for GSMPS 2005-RP3

    Defendants.
_____/

**ORDER**

    This Cause is before the Court upon Defendants' Motion for Summary Judgment (DE 72). Plaintiff filed a Response in opposition to Defendants' Motion for Summary Judgment (DE 78), and Defendants filed a Reply (DE 80). The Court has carefully considered the Motion, the Response, and the Reply, as well as the entire record, and is otherwise fully advised in the premises. For the reasons stated below, the Motion for Summary Judgment is granted in part and denied in part.

**I.    LEGAL STANDARD**

    The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

    The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* To discharge this burden, the movant must point out to the

Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. The material in the record must be viewed in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**II.     DISCUSSION**

　　A.     Standing

The "irreducible constitutional minimum" of standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To show an injury in fact, the plaintiff must demonstrate that he or she suffered "an invasion of a legally protected interest."  *Lujan*, 504 U.S. at 560.  That "interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right."  *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1304 (11th Cir. 2006) (citation and internal quotation marks omitted).  An injury in fact must be concrete, particularized, and actual or imminent.  *Lujan*, 504 U.S. at 560.  Further, the Supreme Court has rejected the argument that an injury must be "significant."  *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009).  A small injury or "an identifiable trifle" is sufficient to confer standing.  *Id.* (quoting *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973)).

　　Here, the Court finds that Plaintiff has sufficiently asserted an alleged injury in fact in the form of deprivation of her alleged ownership interest in the real property located at 165 Nelson Drive, Brighton, Tennessee ("Property").  Plaintiff testified during her deposition that Freddie Allen Ford and Annette Margaret Erckman executed a quitclaim deed conveying their interest in the Property to her (DE 71-6 at 9, Pl.'s Dep. 27-29), and asserts that Defendants' actions deprived her of her interest in the Property when they refused to apply certain insurance funds toward the payoff of the loan and then foreclosed upon the Property.  Based thereupon, Plaintiff has brought claims for

fraud, conversion, trespass, wrongful foreclosure, violations of the Truth in Lending Act ("TILA"), intentional infliction of emotional distress, misrepresentation, unjust enrichment, and breach of contract. (DE 1.)

In opposition, Defendants contend that the alleged quitclaim deed does not supply Plaintiff with the requisite standing to prosecute this action because it was never recorded and was destroyed. While it might be true that the alleged deed was never recorded and was eventually destroyed, the Court disagrees with Defendants' attempt to understate the significance of Plaintiff's property interest for Article III standing purposes.

The parties agree that Tennessee law determines the extent of Plaintiff's property interests. Under Tennessee statutory law, a deed "shall have effect between the parties to the same . . . without registration . . . ." Tenn. Code Ann. § 66–26–101; *In re Fowler*, 201 B.R. 771, 775 (Bankr. E.D. Tenn. 1996) ("In Tennessee, an unregistered deed is valid and enforceable as between the parties to the instrument."). A deed is valid and effective between the parties without registration and passes title to the grantee. *Cox v. Keathley*, 42 S.W. 437, 438 (Tenn. 1897) (holding that unrecorded deed that was accidentally destroyed was valid between the parties and passed title to the vendee). That Plaintiff's alleged interest was subject to future divestment by a third party, *see In re Don Williams Const. Co., Inc.*, 143 B.R. 865, 869 (Bankr. E.D. Tenn. 1992), does not mean that Plaintiff did not have a legally enforceable interest in the Property at the time of Defendants' alleged misconduct. *See United States v. Real Prop., Including All Improvements Thereon & Appurtenances Thereto, Located at 246 Main St., Dansville, Livingston Cty., New York*, 118 F. Supp. 3d 1310, 1319 (M.D. Fla. 2015) (finding that a claimant had Article III standing to contest the government's forfeiture of real property by virtue of an unrecorded deed making him the owner of the property).

4

Moreover, that a writing does not exist today does not mean that Plaintiff's alleged property rights were unenforceable. Under Tennessee law, the subsequent destruction of a contract originally made in writing does not render the contract unenforceable under the statute of frauds. *McKinnis v. Hammons*, No. E2013-02733-COA-R3CV, 2014 WL 5487789, at *5 (Tenn. Ct. App. Oct. 30, 2014).

The Court concludes that Plaintiff has presented sufficient evidence of a legally enforceable interest in the Property that was lost when Defendants took foreclosure action against the Property to overcome Defendants' summary judgment motion. If believed, the injury she suffered was real, concrete, and particularized under Article III.[1]

Having concluded that Plaintiff has presented sufficient evidence that she suffered an alleged injury, the Court must determine whether the alleged injury is fairly traceable to the challenged conduct of Defendants. The Supreme Court has explained that an injury is not fairly traceable to the actions of a defendant if caused by the "independent action of some third party not before the court," *Lujan*, 504 U.S. at 560 (internal citation and quotation marks omitted), and likewise a controversy is not justiciable when a plaintiff independently caused his own injury. *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012).

Here, the refusal to apply the insurance proceeds toward the payoff of the loan and the ensuing foreclosure sale of the Property was allegedly initiated by Defendants. Plaintiff allegedly

---

[1] The unpublished opinion in *Henry v. Guaranteed Rates, Inc.*, 415 F. App'x 985 (11th Cir. 2011), where the court of appeals concluded in a brief per curiam opinion that a plaintiff lacked standing to assert a TILA claim and other claims about alleged misconduct regarding a loan because the plaintiff was not a party to the loan, is not persuasive authority as to the state law claims in this case because it is unclear whether any of the state law claims asserted in *Henry* were dismissed based upon a lack of standing.

attempted to avoid default and foreclosure by making payments on the loan from 2008 to 2013, assisted with the procurement of a loan modification, and transmitting insurance proceeds to Defendants to pay off the mortgage. (*See* DE 77, Pl.'s Statement of Facts ¶¶ 75-79, 94.) Thus, the asserted injury is fairly traceable to Defendants' alleged misconduct. *See Commonwealth Property Advocates, LLC v. Mortgage Electronic Registration Systems, Inc*., 680 F.3d 1194, 1201 (10th Cir. 2011) (holding that the alleged injury suffered by plaintiff in losing encumbered property that she had received by quitclaim deed was "fairly traceable" to defendants' conduct in initiating an allegedly unauthorized foreclosure). This is not a case where "plaintiff obtained property without protecting [her]self from the borrower's default." *Angels All. Grp. LLC v. ReconTrust Co.*, No. 3:11-CV-01382-MO, 2013 WL 2902676, at *3 n.2 (D. Or. June 11, 2013), *aff'd sub nom*., 617 F. App'x 740 (9th Cir. 2015). For these reasons, the Court finds that the record contains sufficient evidence indicating that the cause of Plaintiff's alleged injury is fairly traceable to Defendants' actions.

      Finally, the Court concludes that the evidence indicates that Plaintiff's alleged injury is likely to be redressed by a favorable judicial decision. An award of damages would compensate Plaintiff for her alleged injury. Consequently, on the Article III standing issue, the Court finds that Plaintiff has presented sufficient evidence to propel her case to the jury (subject to the caveat discussed in Section II.B.2.f below). *See Ford v. Strange*, 580 F. App'x 701, 708 (11th Cir. 2014) ("When jurisdictional and merits question are intertwined, federal courts at least sometimes find that jurisdiction exists and then proceed to analyze the merits."); *Barrett Computer Servs., Inc. v. PDA, Inc*., 884 F.2d 214, 219 (5th Cir. 1989) ("[I]n cases in which the merits of the claims asserted are intertwined with the jurisdictional issue of standing, challenges to standing are frequently resolved

in summary judgment proceedings—where the nonmovant is granted all reasonable factual inferences and the movant cannot succeed unless the court finds that no genuine issue of material fact exists—or at a trial on the merits. In such cases, to compel a preliminary factual inquiry into the plaintiff's standing would force the party bringing the suit to prove merit issues in order to establish jurisdiction.").

   B. Sufficiency of the Evidence as to the Claims/Issues in the Action

     1. Intentional Infliction of Emotional Distress Claim (Count V)

To state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff. *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004). To meet the second element, "[i]t is not sufficient that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Id.* (citation and internal quotation marks omitted). "Rather, a plaintiff must show that the defendant's conduct was:

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his sentiments against the actor, and lead him to exclaim, "Outrageous."

*Sandlin v. Citibank, N.A.*, No. 15-2768-JTF-DKV, 2016 WL 4276287, at *5–6 (W.D. Tenn. July 21, 2016), *report and recommendation adopted*, No. 215CV02768JTFDKV, 2016 WL 4292318 (W.D. Tenn. Aug. 15, 2016).

Here, Plaintiff has failed to show any acts that would rise to the level of outrageous conduct.

Conducting a foreclosure sale is not so outrageous and extreme as to go beyond all possible bounds of decency and be atrocious and utterly intolerable in a civilized community even if Plaintiff claims that Defendants improperly refused to apply the insurance funds toward the payoff of the loan. "Courts considering claims for intentional infliction of emotional distress in the context of a foreclosure sale have found that facts similar to those alleged here do not rise to the level of outrageous conduct." *Id.* (concluding that intentional infliction of emotional distress claim, which was based upon defendants' conduct in foreclosing on property despite plaintiff's claim that he was not in default, failed to allege conduct so outrageous and extreme as to go beyond all bounds of decency under Tennessee law); *Launius v. Wells Fargo Bank, N.A.*, No. 3:09-CV-501, 2010 WL 3429666, at *2, 5 (E.D. Tenn. Aug. 27, 2010) (holding that conducting foreclosure sale while plaintiff attempted to modify the loan did not constitute outrageous conduct under Tennessee law).

For these reasons, the Court concludes that summary judgment in favor of Defendants on the intentional infliction of emotional distress claim is warranted.

    2.  Claims/Issues as to Which There Exists Questions of Fact

As to the remaining issues and claims, the Court finds that the record contains sufficient evidence to raise genuine issues of material fact as to the elements thereof and therefore summary judgment is denied.

    a.  Judicial Estoppel Defense

As to Defendants' judicial estoppel defense, Plaintiff's testimony during her deposition that she thought she had listed both her father and herself as owners of the Property in the bankruptcy proceeding (DE 71-6 at 54, Pl.'s Dep. 206), suggests that there exists a question of material fact as to whether Plaintiff had the motivation and intent to manipulate the judicial system under the

8

circumstances presented here. *See Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1346 (11th Cir. 2006) (finding that genuine issue of material fact existed as to whether debtor had motivation and intent to manipulate the judicial system by such delay, precluding summary judgment).

### b. Fraud and Misrepresentation Claims (Counts I and VI)

As to the fraud and misrepresentation claims, the Court finds that Plaintiff has provided sufficient evidence to create a genuine issue of material fact as to the reasonableness of Plaintiff's reliance on the alleged misrepresentations. *Silvestro v. Bank of Am.*, N.A., No. 3-13-0066, 2014 WL 3729851, at *2 (M.D. Tenn. July 28, 2014) ("Whether a person's reliance on a representation is reasonable generally is a question of fact requiring the consideration of a number of factors." (quoting *Davis v. McGuigan*, 325 S.W.3d 149, 158 (Tenn. 2010)).[2] The record contains evidence from which a reasonable jury could conclude that Defendants represented to Plaintiff that they would accept an insurance check in the amount of $13,246.99 after the "good through" date on the Payoff Quote in satisfaction of the loan obligation without the need of a written affidavit from Plaintiff. (DE 77-11 at 9, Transcript of 7/23/2015 Telephone Call at 8; *see also* DE 77-10 at 11, 17, Transcript of 6/9/2015 Telephone Call at 10, 16; DE 77-33 at 5, Transcript of 7/27/2015 Telephone Call at 4.) Although the terms of the Payoff Quote and the foreclosure notices mention in general terms the possibility of additional charges and the form of payment, the Court concludes that given Plaintiff's arguable lack of sophistication and expertise in the area and the nature of the alleged misrepresentations, among other factors, the record presents a question of fact for the jury on the

---

[2] Those factors include the plaintiff's sophistication and expertise in the subject matter, the type of relationship—fiduciary or otherwise—between the parties, the availability of relevant information, any concealment of the misrepresentation, any opportunity to discover the misrepresentation, which party initiated the transaction, and the specificity of the misrepresentation. *Davis*, 325 S.W.3d at 158.

reasonableness of Plaintiff's reliance.

### c. Conversion Claim (Count II)

As to the conversion claim, Defendants have not made a showing that there is no material issue of fact as to Plaintiff's alleged lack of ownership of the property in question. Regarding the real Property, Plaintiff has testified that she obtained ownership over the real Property by an unrecorded quitclaim deed but that the quitclaim deed was destroyed in a house fire. (DE 71-6 at 9, Pl.'s Dep. 27-29.) Although Defendants argue that Plaintiff's entire story about the 2008 quitclaim deed was concocted to establish standing, the Court finds that Defendants' argument and the evidence that supports it present a factual dispute that should be considered by the jury. In particular, in light of Plaintiff's assertion that a fire allegedly destroyed the quitclaim deed in May 2015, the import of Plaintiff's allegedly inculpatory albeit subsequent statement that there was no quitclaim deed signed by Annette Erckman is a matter better left for consideration by the jury. (*See* DE 77-9 at 11-12, Transcript of 6/24/2015 Telephone Call at 10-11 (suggesting that there was no quitclaim deed from Annette Erckman).)

As to the insurance check, notwithstanding the fact that the check was also made payable to Ocwen Loan Servicing, LLC (DE 1-10), the evidence suggests that Defendants' customer representative assured Plaintiff that once the insurance check was received by Defendants, the amount would be applied against the loan balance and Plaintiff would not need to do anything further. (DE 77-11 at 9, Transcript of 7/23/2015 Telephone Call at 8; *see also* DE 77-10 at 11, 17, Transcript of 6/9/2015 Telephone Call at 10, 16.)

As to the personal property in the home, Plaintiff testified that Defendants' representatives told her that they had taken and disposed of some items from her home and that with the exception

of a couple of boxes, the items were hers. (DE 71-6 at 70, Pl.'s Dep. 246:6-17, 249.) Hence, the evidence in the record raises genuine disputes of material fact on the conversion claim that preclude summary judgment.

          d.       Trespass Claim (Count III)

As to the trespass claim, Defendants' argument that the Deed of Trust granted them authorization to enter the Property in the event of default begs the question whether Plaintiff was in default at the time of the entry. Plaintiff has presented evidence to suggest that she had provided Defendants sufficient funds to bring her payments current and reinstate the loan when she transmitted the insurance check in the amount of $13,246.99 in July 2015, as the reinstatement amount as of August 19, 2015 was only $2,933.02 (DE 77-20). Thus, there is a question of fact as to whether Defendants were authorized to enter the Property.

          e.       Wrongful Foreclosure Claim (Count IV)

As to the wrongful foreclosure claim, Plaintiff has presented sufficient evidence in the record to raise factual issues as to Plaintiff's alleged ownership of the real Property and Plaintiff's payoff of the loan. As discussed above, Plaintiff's testimony regarding the existence of a quitclaim deed that conveyed title to the Property to her (DE 71-6 at 9, Pl.'s Dep. 27-29), and the transcripts of the recorded telephone conversations between Plaintiff and Defendant's customer service representative regarding the use of insurance proceeds to payoff the loan (DE 77-11 at 9, Transcript of 7/23/2015 Telephone Call at 8; *see also* DE 77-10 at 11, 17, Transcript of 6/9/2015 Telephone Call at 10, 16; DE 77-33 at 5, Transcript of 7/27/2015 Telephone Call at 4), raise factual questions not appropriate for resolution at the summary judgment stage.

    f.  TILA & Breach of Contract Claims (Counts VII & IX)

As to the TILA and breach of contract claims, Defendants' argument that Plaintiff cannot maintain these claims because Plaintiff was not a party to any loan agreement with Defendants ignores the Assignment of Rights and Claims ("Assignment") executed by Freddie Ford in Plaintiff's favor. (DE 77-22.)[3] Pursuant to that Assignment, Plaintiff's father, who is a party to the loan documents, assigned to Plaintiff "all . . . claims" arising out of Defendants' handling of the mortgage note and foreclosure. (*Id.*) Defendants failed to address the validity or effectiveness of the Assignment as to the breach of contract and/or the TILA claims.

    g.  Unjust Enrichment Claim (Count VIII)

As to the unjust enrichment claim, the Court finds that the record raises questions of fact as to whether Defendants' retention of the Property, insurance proceeds and/or personal property was inequitable. A reasonable jury could conclude that Defendants' extension of the original loan was not sufficient consideration to justify Defendants' alleged misconduct. Moreover, although the record contains express loan agreements, the loan agreements do not preclude Plaintiff's recovery under an unjust enrichment theory because the agreements do not address how or under what circumstances insurance funds could be applied toward the payoff of the loan. *Nashville Painting Corp. v. Ray Bell Const. Co.*, No. 01A01-9510-CH-00491, 1996 WL 474426, at *4 (Tenn. Ct. App. Aug. 21, 1996) (affirming trial court's award of damages for extra-contractual work under a quantum

---

[3] Plaintiff complains that she signed the 2013 loan modification as a co-borrower. While Plaintiff's signature appears on a copy of a loan modification agreement in the record, none of the provisions of the loan modification agreement actually obligate Plaintiff to pay the loan. (DE 77-2.) Rather, the provisions of the loan modification agreement place the payment obligations on Freddie A. Ford, as borrower. (*Id.*) Moreover, the loan modification agreement that was ultimately recorded does not contain Plaintiff's signature as a borrower. (DE 1-7.) At a minimum, the record contains factual questions for the jury.

meruit theory of recovery where the work performed fell outside the subject matter of the written contract). Because resolution of the factual issues may require credibility findings, the Court finds that summary judgment is inappropriate on the unjust enrichment claim. *Bridgeforth v. Jones*, No. M2013-01500-COA-R3CV, 2015 WL 336376, at *24 (Tenn. Ct. App. Jan. 26, 2015) ("[Because] the resolution of [the evidence] may require credibility findings that are not appropriate at the summary judgment stage, we have determined that a genuine dispute exists concerning facts that are material to the unjust enrichment claim upon which the summary judgment is predicated that creates a genuine issue for trial.").

> h. Punitive Damages

As to the punitive damages allegation, the Court concludes that the issue of whether Defendants acted intentionally or recklessly is a matter better left to the jury. Further, the Court declines to decide, at this time, the issues raised by the parties as to bifurcation and the applicable law.

> C. Supplemental Telephone Call Recordings in the Record

The Court has considered the call recordings made or received by Freddie Ford to or from Plaintiff, which were produced by the North Carolina prison hospital, where Freddie Ford is detained, as to which the Court will grant Defendants' motion to supplement their record on their summary judgment motion. (DE 83.) Based upon the Court's careful review, the Court's overall impression of the statements made during the calls, arguably owing to Plaintiff's and her father's alleged lack of expertise in the area of land conveyances and their use of imprecise terminology,[4] is

---

[4] Plaintiff's and her fathers' alleged familiarity and understanding of real estate terminology is a question of fact for the jury.

that the meaning of the statements are not altogether clear and that therefore their content and import is better left for the jury to sort out. The Court has also considered Plaintiff's Affidavit ("Affidavit"), in which she has explained some of the statements she made during the recorded calls. (DE 84-2.)

For example, during the December 20, 2017 telephone call, Plaintiff stated to her father that "we didn't transfer the deed." (DE 83-1 at 4, Transcript of 12/20/2017 Telephone Call 6:3-9.) It is difficult to understand what the parties to the telephone conversation meant by this statement since, in real estate parlance, the ownership of the property is the thing being transferred, and the deed is the document that transfers ownership; the deed itself is not transferred but is recorded. As to this statement, Plaintiff explains in her Affidavit that she was referring to a provision in the 2008 Contract executed by and between Plaintiff, as purchaser, and her father, Freddie Ford, as seller ("2008 Contract")[5] that states that "Buyer and Seller have executed a 'Quitclaim Deed' which Buyer will file in Tipton County Tennessee on a future date." (DE 84-2, Pl.'s Aff. ¶ 6; DE 1-4, 2008 Contract.)

During the December 20, 2017 and December 26, 2017 telephone calls, respectively, Plaintiff stated to her father that the contract "had that that [sic] was only to take effect if you die" and Plaintiff's father said to Plaintiff, "[T]hey steal a house that was given to you in trust while I'm away and now it's time for me to come home and I have no house." (DE 83-1 at 4, Transcript of 12/20/2017 Telephone Call 6:13-15; DE 83-2 at 4, Transcript of 12/26/2017 Telephone Call 6:2-6.) As to these statements, Plaintiff explains in her Affidavit that they were referring to a provision in the 2008 Contract that states that the "Seller will maintain his rights to live at this property until he

---

[5] Defendants' various challenges to Plaintiff's reliance on the 2008 Contract can be presented to the jury.

so chooses not to or until he is deceased." (DE 84-2, Pl.'s Aff. ¶¶ 4,8; DE 1-4, 2008 Contract.)

Due to the arguable vagueness and imprecision inherent in Plaintiff's statements during the recorded telephone calls, coupled with Plaintiff's explanations in her Affidavit, the Court cannot conclude that Plaintiff was never deeded the Property and lacks standing as a matter of law. The import of the statements made during the recorded telephone calls is a matter that should be decided by the jury.

### III. CONCLUSION

Based upon the foregoing, the Court concludes that the record evidence presents a genuine issues of material fact as to the issues raised in the Motion for Summary Judgment, with the exception of the intentional infliction of emotional distress claim as to which Defendants are entitled to summary judgment as a matter of law.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (DE 72) is **GRANTED IN PART AND DENIED IN PART**. Defendants are entitled to summary judgment as to the intentional infliction of emotional distress claim; the Motion for Summary Judgment is otherwise denied.

In addition, Defendant's Motions for Judicial Notice and to Supplement (DE 79, 83), which are unopposed, are **GRANTED**.

Defendant's Motions for Sanctions and to Continue (DE 86, 90) are **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of October, 2018.

_____
KENNETH A. MARRA
United States District Judge

15