IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JENNIFER FORD HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OCWEN LOAN SERVICING, LLC and ) | Case No. 9:17-cv-80525 |
| U.S. BANK NATIONAL ) | |
| ASSOCIATION, as trustee for GSMPS ) | |
| 2005-RP3, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants Ocwen Loan Servicing, LLC and U.S. Bank National Association, as Trustee for GSMPS 2005-RP3 ("Defendants") file the following Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a).

**I. LEGAL STANDARD**

Under Rule 50, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may" resolve that issue against the party and enter "judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1); *see Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (Rule 50 "allows the trial court to remove cases or issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result").

"[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing*

*Prod., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted); *Chapman v. AI Transport*, 229 F.3d 1012, n.11 (11th Cir. 2000) (*en banc*) (same). In ruling on such a motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id*. at 150-51 (citation omitted). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id*. at 151 (citations omitted).

## II. ARGUMENT

### A. Fraud/Misrepresentation

Plaintiff asserts causes of action against Defendants for fraud and intentional misrepresentation. The elements of these claims mirror each other, and the parties have treated them as coextensive here. *See Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (holding that "'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action" and directing courts to use the term "intentional misrepresentation").

To recover for intentional misrepresentation (whether styled fraud or misrepresentation), Plaintiff must prove: "(1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was

2

justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation." *Hodge*, 382 S.W.3d at 343.

Judgment as a matter of law should be granted as to Plaintiff's intentional misrepresentation claims because Plaintiff has failed to adduce proof sufficient to create a triable question of fact that (1) Ocwen made a misrepresentation of fact and (2) Plaintiff justifiably relied upon any such misrepresentation.

**False Statement**. As to both Counts I and VI, the allegedly false representation must relate "to an existing or past fact or, if the claim is based on promissory fraud, then the misrepresentation must 'embody a promise of future action without the present intention to carry out the promise.'" *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990) (citations omitted). Plaintiff failed to create a jury question with respect to either theory.

**Justifiable Reliance**. Plaintiff has the affirmative burden of proving reasonable, justifiable reliance upon Ocwen's claimed intentional misrepresentations. *McNeil v. Nofal,* 185 S.W.3d 402, 408 (Tenn. Ct. App. 2005). In other words, to prevail on a cause of action for intentional misrepresentation, the plaintiff must show that she acted upon a misrepresentation while "believing it to be true." *Russell v. Zanone*, 404 S.W.2d 539, 561 (Tenn. Ct. App. 1966); *see Freeman v. Citizens' Nat'l Bank*, 70 S.W.2d 25, 29 (Tenn. 1933) ("Fraud involves deception and if one knows the truth, and is not deceived, he is not defrauded."). Furthermore, "[j]ustifiable reliance in this context is *not* blind faith." *McNeil,* 185 S.W.3d at 408. Thus, "[w]here the means of information are at hand and equally accessible to both parties so that, with ordinary prudence or diligence, they might rely on their own judgment, generally they must be presumed to have done so, or, if they have not informed themselves, they must abide the consequences of their own inattention and carelessness." *Id*. at 409.

The evidence demonstrates no material dispute that Plaintiff justifiably relied upon any alleged misrepresentation by Ocwen.

For those reasons, Plaintiff cannot meet prove justifiable reliance, and this Court should grant judgment as a matter of law on Counts I and VI of the Complaint.

### B. Conversion

Conversion is a party's "'appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right.'" *Hanna v. Sheflin,* 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008) (citation omitted). A prima facie case for common-law conversion requires the claimant to prove "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." *Marks, Shell & Maness v. Mann,* 2004 WL 1434318, *3 (Tenn. Ct. App. June 23, 2004) (citation omitted)). In addition, "conversion can be maintained only if the plaintiff can show possession or a right to immediate possession of the item converted at the time of the alleged conversion." *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836-37 (Tenn. Ct. App. 1977). The party claiming conversion has the burden of proving each element. *Nunley v. Nunley,* 925 S.W.2d 538, 541-42 (Tenn. Ct. App. 1996).

Plaintiff has failed to demonstrate facts sufficient to put her claim for conversion before the jury.

### C. Trespass

"Trespass upon real property entails the unauthorized, and therefore unlawful entry into the close of another." *Rector v. Halliburton*, 2003 WL 535924, *6 (Tenn. Ct. App. Feb. 26, 2003). "In actions of trespass possession is the gist of the action, and the gist of the trespass is the injury to possession. Either actual or constructive possession is sufficient to maintain trespass. If the party is in actual possession under a deed, this is sufficient to maintain the action. If he is not in actual

possession, he must show a legal title to the property, and then constructive possession will be presumed from the legal title[.]" *Scott v. Yarbro*, 2005 WL 1412128, *3 (Tenn. Ct. App. June 15, 2005) (citation omitted). Moreover, even if a trespass is proven, it may be excused if the evidence demonstrates that it was legally privileged or justified. *Miles v. Huff's Foodtown, Inc.*, 1986 WL 1786, *3 (Tenn. Ct. App. Feb. 11, 1986).

Plaintiff has failed to establish her prima facie case of trespass, and therefore judgment as a matter of law is proper.

### D.     Wrongful Foreclosure

"While there are not specific elements for wrongful foreclosure, Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Mary Ringold v. Bank of Am. Home Loans*, 2013 WL 145929, *6 (W.D. Tenn. Apr. 9, 2013) (citation omitted); *see Hossain v. Ocwen Loan Servicing, LLC*, 2014 WL 4347620, *7 (M.D. Tenn. Aug. 29, 2014) (same); *Jackson v. WMC Mortg. Corp.*, 2013 WL 5550228, *8 (W.D. Tenn. Sept. 18, 2013) (collecting cases).

**Failure to comply with contractual requirements**. Plaintiff has failed to demonstrate any breach of any provision of the loan documents by Ocwen in foreclosing.

**Failure to comply with statutory requirements**. Plaintiff also fails to identify any statutory requirements allegedly violated by Ocwen.

Because the foreclosure on the Property complied with both Ocwen's contractual and statutory obligations in noticing and holding the sale, Defendants are entitled to judgment as a matter of law on Count IV.

### E. TILA and Regulation Z

Claiming through the purported assignment from Freddie Ford, Plaintiff alleges that Defendants violated TILA when Ocwen failed to credit the Farmers Insurance hazard check to Mr. Ford's account as of the date it was received, and instead placed it in a hazard suspense account.

TILA provides that, "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency[.]"  15 U.S.C. § 1639f(a).  TILA, however, does not impose liability on servicers for failure to comply with this requirement; rather, liability, if any, is falls upon the "creditor" with respect to the particular consumer credit transaction.  15 U.S.C. § 1640(a) (cause of action may be brought against "any creditor who fails to comply with any requirement imposed under this part"); *Lucien v. Fed. Nat'l Mortgage Ass'n*, 21 F. Supp. 3d 1379, 1383 (S.D. Fla. 2014) ("Courts applying TILA uniformly hold that there is no servicer liability under TILA.").

Thus, to prove her TILA cause of action, Plaintiff must establish that:  (1) U.S. Bank is a "creditor" under TILA; (2) Ocwen failed to promptly credit a payment made to the mortgage loan account as of the date it received the payment; (3) Ocwen's failure to promptly credit a payment made to the mortgage loan account as of the date Ocwen received the payment resulted in charges being imposed upon the account; and (4) Ocwen's failure to promptly credit the payment made as of the date the payment was received caused actual damages.  Plaintiff did not meet her *prima facie* case of showing these elements.

**Creditor**.  The evidence affirmatively establishes that U.S. Bank is not a "creditor" as defined by TILA.  TILA provides that "[t]he term 'creditor' refers **only** to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise,

6

consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(g) (emphasis added); 12 C.F.R. § 226.2(a)(17)(i) ("A person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." (footnote omitted)).

In this case, of course, the "face of the evidence of indebtedness" demonstrates that "the person to whom the debt arising from the consumer credit transaction [was] initially payable" was First State Bank, not U.S. Bank. U.S. Bank is thus not a "creditor" and cannot be liable under TILA. *See Vincent v. The Money Store*, 736 F.3d 88, 107 (2d Cir. 2013) (holding that the plain language of TILA compels the conclusion that only the initial person to whom a debt was payable, and not any assignees of that debt, can be a "creditor").

TILA does permit assignees to be held liable in certain circumstances, but Plaintiff does not allege that theory in the Complaint, asserting only (incorrectly) that U.S. Bank was the "creditor" of the Ford loan. ECF 1, ¶ 122. That aside, an assignee is liable for damages "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary." 15 U.S.C. § 1641(a). The Eleventh Circuit has held that "the disclosure statement" referenced in this section is given "before the extension of credit that sets out the terms of the loan." *Evanto v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 1295, 1297 (11th Cir. 2016). The alleged failure to properly apply a payment made by a

customer to his or her loan cannot, by definition, appear on the face of disclosures made prior to the extension of credit.

This is made clear by *Evanto*. There, the plaintiff sued an assignee based upon the failure to provide a timely payoff balance. *Id*. at 1297. The Eleventh Circuit held that this did not state a claim under TILA because a "payoff balance can be provided only after a loan has been made and contains the amount yet to be repaid. There is no way that the failure to provide a payoff balance can appear on the face of the disclosure statement." *Id*. at 1297-98. Likewise here, a post-closing breach of a servicing obligation cannot "appear on the face of the disclosure statement." As such, U.S. Bank cannot be liable for damages as an assignee either.

**Crediting of payment**. TILA states that, "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency[.]" 15 U.S.C. § 1639f(a). The Consumer Financial Protection Board has interpreted this provision as prohibiting a servicer from "fail[ing] to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency[.]" 12 C.F.R. § 1026.36(c)(1)(i). This regulation "does not require that a mortgage servicer post the payment to the consumer's loan account on a particular date; the servicer is only required to credit the payment **as of** the date of receipt." 12 C.F.R. Part 1026 Supplement I, Paragraph 36(c)(1)(i) (emphasis in original). "Accordingly, a servicer **that receives a payment on or before its due date (or within any grace period)**, and does not enter the payment on its books or in its system until after the payment's due date (or expiration of any grace

period), does not violate this rule as long as the entry does not result in the imposition of a late charge, additional interest, or similar penalty to the consumer, or in the reporting of negative information to a consumer reporting agency." *Id*. (emphasis added).  In other words, Section 1639f and Regulation Z are only violated where a consumer makes a timely payment which is not credited as of the date of receipt and, **as a result of that delay**, the consumer incurs a late charge to which he or she otherwise would not have been subject.  *Vincent*, 736 F.3d at 105-06 (explaining that Official Staff Commentary interpreting TILA is entitled to deference).

Plaintiff has failed to adduce evidence that she submitted a timely payment that Ocwen failed to credit, thereby causing the imposition of fees on Mr. Ford's account.  The relevant portion of Regulation Z requiring posting of payments as of the date of receipt only applies to "periodic payments," defined as "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle."  12 C.F.R. § 1026.36(c)(1)(i).  The Farmers Insurance check was not a payment, let alone the "periodic payment" due on the account.  Unlike a payment, which gives the servicer the authority to apply amount received directly to payments of principal, interest and escrow then due, the Farmers Insurance check was a hazard insurance reimbursement held in suspense pending Plaintiff's written confirmation, in the form of the affidavit provided by Ocwen, that it could be applied directly to the account.[1]  The submission of such a check, without all documents required to permit its application to amounts due and owing on the loan account in question, cannot be considered a "payment."

Even assuming that the insurance check delivered to Ocwen was a "periodic payment" as defined in Regulation Z, the evidence is undisputed that it was received **after** the deadline

---

[1] Requiring such an affidavit is consistent with Ocwen's authority under Regulation Z to "specify reasonable requirements for making payments in writing[.]"  12 C.F.R. Part 1026 Supplement I, Paragraph 36(c)(1)(iii).

communicated to Plaintiff by which the payoff had to be received. It was this, and not Ocwen's placement of the Farmers Insurance check in suspense, which caused the subsequent charges to be placed upon Mr. Ford's account. *See* 12 C.F.R. Part 1026 Supplement I, Paragraph 36(c)(1)(i) (in order for Regulation Z to be violated, the servicer must first "receive[] a payment on or before its due date (or within any grace period)").

**Causal connection between the alleged TILA violation and Plaintiff's damages**. Under TILA, a plaintiff may recover "any actual damage sustained by such person as a result of the failure" to comply with the statute. 15 U.S.C. § 1640(a)(1). The Eleventh Circuit has held that this language means that "a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages." *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001).

First, it is undisputed that Plaintiff brings this TILA cause of action solely as assignee of Mr. Ford, rather than in her own right. Therefore, Plaintiff was required to prove that **Mr. Ford** suffered damages as a result of the alleged violation of TILA, rather than Plaintiff. Plaintiff has presented no evidence, however, that Mr. Ford suffered any damages—economic or emotional—due to the claimed failure to timely apply the Farmers Insurance check to his account.

Second, the evidence demonstrates that any causal link between the alleged failure to timely post the Farmers Insurance payments to Mr. Ford's account and any ensuing late fees and costs was severed in June 2016, when Ocwen offered to accept the hazard suspense amount as a short payoff on Mr. Ford's loan. Plaintiff refused to accept this offer; in doing so, Plaintiff eliminated U.S. Bank's liability, if any, for damages.

**Statute of limitations**. Assuming that these defects in Plaintiff's *prima facie* case are overcome, her TILA claim is time-barred. TILA provides that a cause of action may be brought

"within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Barnes v. Compass Bank*, 568 F. App'x 743, 744 (11th Cir. 2014) (noting that "[a]s a general rule, the statute of limitations clock begins to tick when the plaintiff first has a complete and present cause of action" and holding that TILA cause of action accrued on the date of the violation).

As already stated, the evidence indicates that the alleged TILA violation, if any, occurred when Ocwen failed to credit the Farmers Insurance check directly to Mr. Ford's account when it was received in July 2015. Plaintiff, however, did not file this case until April 25, 2017, well more than a year after the supposed TILA violation occurred. Plaintiffs' TILA claim is thus time-barred on its face.

To the extent Plaintiff claims she is able to avoid the running of the statute of limitations through equitable tolling, the evidence offered by Plaintiff does not create a triable issue regarding whether she can receive the benefit of equitable tolling. Equitable tolling is appropriate where a plaintiff can demonstrate that the defendant fraudulently concealed the existence of his or her cause of action, notwithstanding his or her exercise of reasonable diligence. *Ellis v. GMAC*, 160 F.3d 703, 706-08 (11th Cir. 1998). The party seeking equitable tolling has the burden of proof of showing that it is applicable. *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (*en banc*) (citations omitted), *cert. denied*, ___ U.S. ___, 137 S. Ct. 2292 (2017). Plaintiff is not entitled to equitable tolling because she adduced no evidence that U.S. Bank fraudulently concealed the existence of her cause of action; nor was she reasonably diligent, given that she was aware shortly after July 2015 that the Farmers Insurance check had not been applied to pay down the amount due on Mr. Ford's account, but still waited another 18 months-plus before filing this case. Because this claim is time-barred, and not saved via equitable tolling, judgment as a matter of law should be entered in Defendants' favor.

### F. Unjust Enrichment

Plaintiff contends that Ocwen has been unjustly enriched at Plaintiff's expense, and Plaintiff has been unjustly deprived of her (1) Property; (2) the Farmers Insurance check in the amount of $13,246.99; and (3) her personal belongings that were stored on the Property.

The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966). The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust. *Id.*; *Whitehaven Cmty. Baptist Church v. Holloway,* 973 S.W.2d 592, 596 (Tenn. 1998).

Plaintiff has failed to establish the elements of unjust enrichment.

### G. Breach of Contract

Plaintiff asserts, both individually and as assignee of Freddie Ford, a breach of contract claim against Ocwen. A claim for breach of contract requires "(1) the existence of an enforceable contract [between the parties], (2) nonperformance amounting to a breach of the contract, and (3) damages caused by a breach of the contract." *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). The "most basic element" of a breach of contract claim is "that an express contract between [the parties] exists." *Le Jo Enters. v. Cracker Barrel Old Country Store*, 2013 WL 6155622, *6 (Tenn. Ct. App. Oct 16, 2013). Indeed, "[t]o attempt to hold

someone liable on a contract to which it is not a party is contrary to common reason." *Bonham Group Inc. v. City of Memphis*, 1999 WL 219782, *7 (Tenn. Ct. App. April 16, 1999).

Plaintiff has not established the existence of a contract between her and Ocwen and, therefore, is precluded from bringing a breach of contract action individually. Even if not, Plaintiff has not demonstrated the elements of a breach of contract.[2]

Furthermore, judgment as a matter of law is appropriate because the evidence demonstrates that, in all interactions between Ocwen and Freddie Ford (or Plaintiff, for that matter), they were aware Ocwen was acting on behalf of the owner of the Ford Loan. Tennessee law provides "that an agent, dealing for a disclosed principal within the scope of his powers, is not personally liable, unless . . . it was his intention to become personally liable." *Klosterman Dev. Corp. v. Outlaw Aircraft Sales*, 102 S.W.3d 621, 636 (Tenn. Ct. App. 2002). Because there is no dispute of material fact that Ocwen was dealing with Freddie Ford and Plaintiff as agent for the owner of the Ford Loan, no breach of contract cause of action lies against it.

### H.  Punitive damages

On a motion for judgment as a matter of law where punitive damages are sought, "a court must determine whether there is sufficient evidence, using the clear and convincing evidence standard, to submit the punitive damage claim to the jury." *Duran v. Hyundai Motor Am., Inc.*, 271 S.W.3d 178, 208 (Tenn. Ct. App. 2008). "A submissible punitive damages claim has been made if the evidence and the inferences reasonably drawn from the evidence are sufficient to permit a reasonable juror to conclude that the plaintiff established with convincing clarity that the defendant's conduct that caused the plaintiff's injury was intentional, fraudulent, malicious, or

---

[2] To the extent Plaintiff's breach of contract claim is predicated upon the purported assignment of claims from Freddie Ford to her, it fails for the same reasons.

reckless." *Id*.; *see* Tenn. Code. Ann. § 29-39-104(a)(1) ("Punitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously, intentionally, fraudulently or recklessly[.]").

Plaintiff has not made out her prima facie claim, by clear and convincing evidence, that Defendants "acted maliciously, intentionally, fraudulently or recklessly" such that punitive damages may be awarded.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court enter judgment as a matter of law in favor of the Defendants, and grant such other and further relief this Court deems just and proper.

This 9th day of January, 2019.

                                    **DUANE MORRIS LLP**

                                    */s/ Kassia Fialkoff*
Kassia Fialkoff
Florida Bar No.: 117708
kfialkoff@duanemorris.com
201 South Biscayne Boulevard, #3400
Miami, Florida 33131
Telephone: (305) 960-2200

Alexander D. Bono (*admitted pro hac vice*)
adbono@duanemorris.com
30 South 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000

*Attorneys for Ocwen Loan Servicing, LLC and U.S. Bank National Association, as Trustee for GSMPS 2005-RP3*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served by electronic service using CM/ECF on this 9th day of January, 2019, on all counsel or parties of record on the Service List below.

/s/ Kassia Fialkoff
Kassia Fialkoff

## SERVICE LIST

Charles A. Gower, Esq.
Shaun P. O'Hara, Esq.
Charles A. Gower, P.C.
P.O. Box 5509
1425 Wynnton Road
Columbus, GA 31906
*Charlie@cagower.com*
*shaun@cagower.com*

Robert Andrew Bernstein, Esq.
Brian W. Chaiken, Esq.
Annesser & Chaiken, PLLC
2525 Ponce De Leon Blvd., Suite 625
Coral Gables, Florida 33134
*rberstein@aclaw-firm.com*
*bchaiken@aclaw-firm.com*